**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Artie MAYNARD, Defendant–Appellant.**

No. 02–5987.

United States Court of Appeals,
Sixth Circuit.

April 6, 2004.

Before SUHRHEINRICH, CLAY and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

On February 7, 2002, Artie Maynard pleaded guilty to one count of conspiring to possess with intent to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. § 846 (conspiracy) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute). On appeal, Maynard challenges the validity of his sentence on several grounds. As we conclude that each challenge is without merit, we affirm.

## I.

Upon learning that Artie Maynard had been selling methamphetamine from his apartment in Cleveland, Tennessee, Detective Jimmy Smith approached Maynard's residence and attempted to purchase methamphetamine from him on the night of July 27, 2001. When Smith entered the apartment, he first noticed a handgun lying on the kitchen table, which Maynard picked up and placed in a bag on the floor. Maynard told Smith that he was out of methamphetamine, but invited him to come back later that night because he expected to receive a new supply by then. Smith returned and again attempted to make a purchase that night, but Maynard indicated that he had not yet received a new supply of drugs. Maynard instead lit his methamphetamine pipe and offered to

share it with Smith. At that point, Smith arrested Maynard and executed a previously-obtained search warrant, seizing seven grams of methamphetamine and a variety of drug paraphernalia.

Maynard chose to cooperate with the police. He arranged a drug transaction with his immediate supplier, which resulted in another arrest. One participant after another in Maynard's drug-supply chain followed his example, resulting in further arrests and an indictment that ultimately named six defendants, including Maynard. Count One charged all defendants with conspiring (21 U.S.C. § 846) to possess with intent to distribute methamphetamine (21 U.S.C. § 841(a)(1)). Count Two charged Maynard alone with violating 21 U.S.C. § 841(a)(1) for possessing methamphetamine with intent to distribute it to Detective Smith on July 27, 2001.

Maynard and the Government entered into a plea agreement, the terms of which required Maynard to plead guilty to Count One (the drug conspiracy charge) and the Government to dismiss Count Two (the attempted sale to Detective Smith). The Government also agreed to file a motion for a downward departure under U.S.S.G. § 5K1.1 if, "in the view of the United States," Maynard provided substantial assistance in its investigation. Plea Agreement at 2–3; see also U.S.S.G. § 5K1.1 ("Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."). "The determination as to whether or not Mr. Maynard has rendered substantial assistance," the plea agreement indicated, "will be made solely by the United States." Plea Agreement at 3.

In the presentence report, the probation officer determined that Maynard had purchased 453.6 grams of methamphetamine, which warrants a base offense level of 30. See U.S.S.G. § 2D1.1(c)(5) (imposing a 30-point base offense level for trafficking offenses involving "[a]t least 350 G but less than 500 G of Methamphetamine"). In reaching this conclusion, the probation officer relied on the undercover work of Detective Smith, who said Maynard told him that he had purchased between one-half and one ounce of methamphetamine from his supplier once a week for the past eight months. Relying on the lower estimate (one-half ounce per week for eight months), the probation officer calculated that Maynard should be held responsible for buying 453.6 grams of methamphetamine.

At sentencing, Maynard disputed the factual basis for this conclusion. He denied making the statement to Detective Smith and challenged Smith's credibility but offered no other evidence to rebut this conclusion in the presentence report. The district court rejected Maynard's argument and ultimately labeled it "frivolous." Sent. Hr'g Tr. at 46. Based on Maynard's challenge to this aspect of the presentence report, the Government refused to recommend a downward departure under § 5K1.1.

Maynard also challenged two other aspects of the presentence report–its recommendation of a two-point enhancement in his offense level based on his possession of a dangerous weapon during the offense (U.S.S.G. § 2D1.1(b)(1)) and its recommendation not to reduce his offense level based on his "minimal" or "minor" role in the conspiracy (U.S.S.G § 3B1.2). The district court rejected both challenges. At the same time, the district court accepted the presentence report's recommendation that Maynard be given a three-point reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1. All of these adjustments

considered, Maynard ended up with a total offense level of 29 and a criminal history category of I, which creates a sentencing range of 87–108 months. The district court imposed an 87–month sentence.

After the district court imposed this sentence and after Maynard filed a notice of appeal challenging it, the Government filed the post-sentencing equivalent of a § 5K1.1 motion–a Rule 35(b) motion for a reduction in sentence for substantial assistance. *See* Fed.R.Crim.P. 35(b)(1) ("Upon the government's motion made within one year of sentencing, the court may reduce a sentence if ... the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person."). The district court determined that it did not have jurisdiction to rule on the Rule 35(b) motion until after this appeal had been completed. *See United States v. Sanzo,* 831 F.2d 671, 672 (6th Cir.1987) ("A district court has no jurisdiction to rule upon a Rule 35(b) motion after a notice of appeal has been filed.").

## II.

### A.

Under the Sentencing Guidelines, the district court may depart downward from the sentencing range "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person." U.S.S.G. § 5K1.1. In cases where a plea agreement gives the Government sole discretion to determine whether the defendant provided substantial assistance and sole discretion to make a § 5K1.1 motion, a district court lacks authority to grant a sentencing reduction on this basis in the absence of a Government motion. *See Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). Not even the Government's alleged bad

faith in refusing to bring a § 5K1.1 motion may be reviewed by the district court in the context of such agreements. *United States v. Moore,* 225 F.3d 637, 641 (6th Cir.2000). The only exception to this rule is where the Government's refusal to make the motion arises from unconstitutional motives, such as those based on race. *See id.* ("[W]hen a plea agreement allocates complete discretion to the government to consider whether a substantial assistance motion should be filed, we may only review the government's decision for unconstitutional motives.").

In view of these requirements, our reviewing function in this setting is quite limited. Aside from considering whether an unconstitutional motive prompted the Government's conduct, our only other role is to determine whether the plea agreement in fact gives sole discretion to the Government in filing the sentencing-reduction motion–a legal inquiry that receives de novo review. *See United States v. Fitch,* 282 F.3d 364, 366 (6th Cir.2002).

■ In this instance, Maynard does not argue that unconstitutional motives prompted the Government's refusal to bring a § 5K1.1 motion. He instead argues that the district court misread the agreement. We do not agree.

The relevant provision of the plea agreement, paragraph 4(b), reads as follows:

4.b. ... If, *in the view of the United States,* Mr. Maynard renders substantial assistance to the United States, at the time of sentencing the United States will recommend ... a downward departure from the sentencing guidelines range pursuant to Section 5K1.1.... The determination as to whether or not Mr. Maynard has rendered substantial assistance will be made *solely* by the United States. Mr. Maynard understands that this is only a recommendation to the

sentencing Court which it may accept or reject in its sole discretion.

Plea Agreement at 2–3 (emphasis added). An agreement that comes with these kinds of explicit directions leaves little room for alternative interpretations. Paragraph 4(b) deals specifically with a § 5K1.1 motion and gives the Government "sole[ ]" discretion in making the motion. We have construed similar agreements in the past as giving the Government complete discretion (in the absence of unconstitutional motives) in determining whether to make the motion. *See Moore*, 225 F.3d at 641 (upholding the Government's discretion when the plea agreement stated: "The Defendant acknowledges that ... [the] United States retains complete discretion in determining whether a departure motion will be filed."); *United States v. Hawkins*, 274 F.3d 420, 423 (6th Cir.2001) (upholding the Government's discretion when the plea agreement stated: "The parties agree that the determination of whether the defendant's conduct rises to the level of 'substantial assistance' [under U.S.S.G. § 5K1.1] will lie with the United States in its sole discretion.").

■ In response, Maynard initially argues that the Government's decision represented an impermissible reaction to his decision to contest the drug quantity attributable to him. But this contention does not allege an unconstitutional motive and accordingly does not release us (or Maynard) from the strict terms of the plea bargain to which he consented.

■ Maynard next invokes a separate provision of the agreement, which says that "the United States will advise the Court of the nature and extent of Mr. Maynard's forthrightness and truthfulness[,] ... and ask the Court to give same such weight as the Court deems appropriate." Plea Agreement at 2. In Maynard's view, this provision means that the Gov-

ernment may report to the district court that he was untruthful in objecting to the drug amount in the presentence report (which it did) but may not separately rely on lack of truthfulness in refusing to bring a § 5K1.1 motion. The argument, however, impermissibly rewrites the plea agreement. Nothing in the "sole[ ]" discretion language of paragraph 4(b) prohibits the Government from reporting Maynard's lack of truthfulness to the court under paragraph 4, then invoking the same lack of truthfulness in exercising its discretion under paragraph 4(b). The two provisions, moreover, serve different functions. The opening language of paragraph 4 imposes a requirement on the Government to convey the defendant's truthfulness to the district court for *its* consideration in sentencing, while paragraph 4(b) gives the Government *its own* discretion to make a § 5K1.1 motion and to consider all manner of factors (including lack of truthfulness) in doing so. No inconsistency arose.

■ One other point deserves mention. Our conclusion in this case does not mean that the Government's refusal to file a § 5K1.1 motion precludes the Government from later filing, or the district court from later granting, a Rule 35(b) motion–which expressly permits consideration of a defendant's *presentence* assistance. *See* Fed. R.Crim.P. 35(b)(3) ("In evaluating whether the defendant has provided substantial assistance, the court may consider the defendant's presentence assistance."). According to the advisory committee notes, the 1998 amendment to the Rule that added this language was designed to avoid the situation where the sum of a defendant's conduct constitutes "substantial assistance" but his pre- and post-sentencing conduct, when considered separately, does not. *See id.* at advisory committee's note (1998 Amendments) ("Thus, the amendment permits the court to consider, in

determining the substantiality of post-sentencing assistance, the defendant's pre-sentencing assistance."). We leave it to the district court to determine in the first instance whether this is such a case.

### III.

■ Maynard next contests the district court's sentencing enhancement based on possession of a dangerous weapon during the offense. Under § 2D1.1(b)(1), a court is required to impose a two-point enhancement to the defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed" as part of the offense. A district court properly applies this enhancement if the Government proves by a preponderance of the evidence that "(1) the defendant possessed a dangerous weapon (2) during the commission of a drug-trafficking offense." *United States v. Moses,* 289 F.3d 847, 850 (6th Cir.2002). Actual or constructive possession of the weapon suffices to meet this standard. *See United States v. Hill,* 79 F.3d 1477, 1485 (6th Cir.1996) ("Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located.") (internal quotations omitted).

If the Government (1) proves possession and (2) proves that it occurred during the commission of a drug-trafficking offense, "the weapon is presumed to have been connected to the defendant's offense." *Moses,* 289 F.3d at 850. The defendant may rebut this presumption "only by showing that it is 'clearly improbable that the weapon was connected to the offense.'" *Id.* (quoting U.S.S.G. § 2D1.1, cmt. n. 3).

In this instance, the district court found "it is clear the defendant did possess the weapon ... during the commission of a drug-trafficking offense. And the defendant has not demonstrated that it was clearly improbable that the gun was con-

nected with the drug-trafficking offense." Sent. Hr'g Tr. at 13. "This factual finding will not be set aside on appeal unless we conclude that it is clearly erroneous." *Moses,* 289 F.3d at 850.

Maynard admits that he possessed a handgun and that it was visible on the table when Detective Smith initially visited his residence. He contends, however, that he met his burden of showing that it was "clearly improbable" that the handgun was connected to the drug conspiracy. In determining whether a defendant has rebutted this heavy presumption, we have considered a variety of factors: (1) the type of firearm involved; (2) whether the firearm was loaded; (3) the proximity of the firearm to the drugs; and (4) any alternative explanation for the presence of the firearm. *Moses,* 289 F.3d at 850.

Measured by these factors, the district court did not clearly err in giving Maynard the two-point enhancement. First, Maynard admits that he possessed a Glock .45 handgun and that it was visible on the table when Detective Smith visited his residence to buy methamphetamine. And he does not argue that this type of firearm is an uncommon weapon when it comes to a drug conspiracy. *See Moses,* 289 F.3d at 851 (noting that defendant did not argue that a .22 caliber pistol was an uncommon weapon for drug conspirators to possess); *United States v. Drozdowski,* 313 F.3d 819, 822 (3d Cir.2002) ("[C]lear improbability [that a gun is possessed during a drug trafficking offense is] less likely with handguns than with hunting rifles."). Second, the gun was loaded, and Maynard offers no argument to rebut that conclusion.

Third, it was reasonable to conclude that the weapon was in close proximity to the drugs. While Detective Smith did not purchase drugs during this initial visit to the residence, which is when he saw the weap-

on, he did discuss purchasing drugs from Maynard at this point and indeed agreed to come back later for that purpose. On his return visit to Maynard's residence, Detective Smith and Maynard again discussed purchasing drugs and indeed Maynard picked up a nearby pipe and began smoking methamphetamine. At that point, Detective Smith also noticed Maynard in possession of a vial containing an additional three and one-half ounces of the drug. These facts sufficed to establish a close proximity between the handgun and the drugs.

Finally, Maynard's alternative explanation for the gun–target shooting–hardly commands a conclusion that it was "clearly improbable" the handgun served a drug-trafficking purpose. Nor does it advance Maynard's cause that he placed the gun in a bag on the floor when Detective Smith first came to the house. The fact is, the handgun remained nearby during a discussion about selling drugs, which thwarts his effort to rebut the heavy presumption that the handgun had a connection to the offense. *See United States v. Johnson*, 344 F.3d 562, 567 (6th Cir.2003) ("The *defendant* must show, not that there is a possible innocent explanation, nor even that the gun was 'probably' not connected to the offense, nor yet that it is 'improbable' that the gun was so connected, but, even more, that it was '*clearly* improbable.' ").

The district court's decision, it bears adding, is also consistent with several of our precedents. *See, e.g., United States v. Darwich*, 337 F.3d 645, 665 (6th Cir.2003) ("Because the weapons were found in Darwich's home where the drugs were bagged, a presumption arose that the weapon[s were] connected to the offense.") (internal quotations omitted); *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir.2003) (affirming an enhancement where "the firearms were found in a pair of boots on top

of a bag full of other objects related to drug trafficking, including a money counter, drug ledgers, paper money wrappers, and rubber bands."); *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) (affirming an enhancement when "a shotgun and loose ammunition were found in a closet next to the stairway that led to [the defendant's] basement ... [where] [m]arijuana sales were conducted"); *United States v. Stewart*, 306 F.3d 295, 326–27 (6th Cir.2002) (affirming enhancement when police found a handgun "stuffed between [the defendant's] mattress and box spring ... in [his] bedroom ... [where] [m]arijuana was ... found in the bedroom closet").

IV.

■ Maynard, lastly, argues that the district court erred in refusing to reduce his base offense level for his "minimal" or "minor" role in the conspiracy because the other defendants were higher in the distribution chain, and he was merely a low-level dealer. Under Guideline § 3B1.2, a district court may reduce the base offense level by four points if the defendant was a "minimal participant"; two points if the defendant was a "minor participant"; and three points for any participation between "minimal" and "minor." A "minimal participant" is one who is "plainly among the least culpable of those involved in the conduct of the group." U.S.S.G. § 3B1.2 cmt. n. 4. A "minor participant" is one who is "less culpable than most other participants, but whose role [can]not be described as minimal." *Id.* cmt. n. 5. The key question in determining where along this spectrum a defendant falls is "the role the defendant played in relation to the activity for which the court held him or her accountable." *United States v. Roper*, 135 F.3d 430, 434 (6th Cir.1998); *see also United States v. Roberts*, 223 F.3d 377, 381

(6th Cir.2000) ("In [denying] Roberts's request for a downward departure adjustment pursuant to § 3B1.2, the district court properly looked only to the relevant conduct attributed to Roberts for purposes of determining his base offense level.").

Maynard bears the burden of proving his entitlement to the reduction by a preponderance of the evidence. *Id.* at 379. And we review the district court's determination of the defendant's role in the offense using the clearly-erroneous standard. *United States v. Jackson,* 55 F.3d 1219, 1224 (6th Cir.1995).

At sentencing, the district court held Maynard accountable for selling 453.6 grams of methamphetamine. In attempting to minimize his role in the conspiracy, Maynard compares this amount of drug dealing (one-half ounce a week for eight months) with the conduct of his immediate supplier (three to four ounces a week for six to eight months). The key problem with this argument, however, is that it fails to come to grips with the fact that the district court *did not* hold Maynard responsible for distributing more than 453.6 grams of methamphetamine. As this Court has made clear, a defendant is "not entitled to a mitigating role reduction if [he is] held accountable only for the quantities of drugs attributable" to his direct involvement and active participation. *United States v. Campbell,* 279 F.3d 392, 396 (6th Cir.2002). As in *Campbell,* so here: Defendant's offense level was based solely on the amount of drugs that *he* trafficked, not the total amount of drugs attributable to the entire conspiracy. *Id.; see also Roberts,* 223 F.3d at 380 ("The thrust of [his] argument is that his minimal role in the overall conspiracy warrants a § 3B1.2 adjustment, even though the larger conspiracy was not taken into account in establishing [his] base offense level."). In opting to sentence Maynard on the basis of drugs he purchased rather than all drugs involved in the conspiracy and in concluding that Maynard was not a "minimal" or "minor" participant in the conspiracy as to the drugs that he in fact purchased, the district court did not clearly err.

### V.

For the above reasons, we affirm.