

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2005

# USA v. Floyd

Precedential or Non-Precedential: Precedential

Docket No. 05-1641

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Floyd" (2005). *2005 Decisions.* Paper 184.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/184

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 05-1641

————

UNITED STATES OF AMERICA

v.

BENNAE FLOYD,
Appellant

————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 02-cr-00295-6)
District Judge: Honorable Christopher C. Conner

————

Submitted Under Third Circuit LAR 34.1(a)
October 24, 2005

Before: SLOVITER, FISHER, Circuit Judges,
and THOMPSON, District Judge*

(Filed : November 9, 2005 )

————

John A. Abom
Abom & Kutulakis
Carlisle, PA 17013

      Attorney for Appellant

_____

*      Hon. Anne E. Thompson, United States District Judge for
the District of New Jersey, sitting by designation.

Christy H. Fawcett
Office of United States Attorney
Harrisburg, PA 17108

      Attorney for Appellee

OPINION OF THE COURT

———

SLOVITER, <u>Circuit Judge</u>.

      Appellant Bennae Floyd pled guilty to traveling interstate or causing others to travel interstate to facilitate drug trafficking in violation of 18 U.S.C. § 1952(a)(3) and was sentenced to forty-eight months' imprisonment. Floyd appeals, contending that her sentence should be vacated because the Government breached its promise to consider recommending a downward departure from the Sentencing Guidelines if Floyd provided the Government with substantial assistance.

**I.**

      The relevant superceding indictment charged Floyd with criminal conspiracy to distribute 50 grams or more of crack cocaine and five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841 and traveling interstate or causing others to travel interstate to facilitate drug trafficking in violation of 18 U.S.C. § 1952(a)(3). Co-defendants Steven Smith and Kelvin Smith were also named in that charge. Floyd pled not guilty to all charges.

      Shortly after return of the fifth Superceding Indictment, Floyd and the United States entered into a plea agreement which stated, <u>inter alia</u>, "The defendant agrees to plead guilty to . . . traveling interstate or causing others to travel interstate to facilitate drug trafficking in violation of Title 18, United States Code, Section 1952 (a)(3). The maximum penalty for that offense is imprisonment for a period of five years." App. at 69. The plea agreement also stated that the Government "may request" a downward departure for Floyd's cooperation if Floyd

2

"renders substantial assistance." App. at 73.

Pursuant to the terms of the plea agreement, Floyd pled guilty on April 20, 2004 to traveling or causing others to travel interstate to facilitate drug trafficking. The day before trial was scheduled to begin for Floyd's co-defendants, Floyd traveled from South Carolina to Pennsylvania to speak with co-defendant Steven Smith. The Government acknowledged that Floyd's conversations with Smith "probably did at least have some influence on his decision to plead guilty." Supp. App. at 25.

On February 26, 2005, a probation officer filed a pre-sentence report ("PSR") which stated that the charges against Floyd resulted in a base offense level of thirty-eight. Because Floyd accepted responsibility for her actions, three levels were deducted and Floyd's offense level was determined to be thirty-five. Floyd's criminal history placed her in Category VI. The PSR noted that "[h]ad the defendant been convicted as charged in the Indictment, she would have been facing a . . . guideline range of 292 - 365 months." PSR para. 56. In contrast, the statutory maximum sentence for the crime to which Floyd pled guilty, i.e., traveling or causing others to travel interstate to facilitate drug trafficking, is sixty months, as stated in the plea agreement.

At the sentencing hearing, the Government chose not to recommend a downward departure from the sentencing guidelines. According to the Government, "Ms. Floyd's sentencing guidelines range would have been 292 to 365 months but for the fact that she had a charge bargain. . . . [T]he charge bargain was obviously a very significant charge bargain here and [the Government] declined to authorize the motion for downward departure." Supp. App. at 25.

The District Court nonetheless did not accept the recommendation of the PSR that Floyd's offense level was thirty-five. Instead, it found that Floyd's offense level should be calculated based on a Criminal History Category of VI and a cocaine hydrochloride quantity of four to five ounces. This led to a Guidelines sentence of forty-one to fifty-one months, less

than the sixty-month maximum prescribed in the plea agreement. As noted heretofore, she was sentenced to forty-eight months.

## II.

On appeal, Floyd contends that the Government acted in bad faith by entering a plea bargain which contemplated a downward departure in exchange for assistance when the Government never intended to consider a downward departure. Floyd contends that because the Government knew or should have known that the sixty-month sentence was substantially less than the sentence she could have received at trial if she were found guilty of all the crimes for which she was indicted, the Government never had a good faith intention to evaluate the assistance she provided to determine if she merited a downward departure. Floyd also argues that the Government acted in bad faith by choosing not to recommend a downward departure on grounds that were extraneous to the plea agreement. The Government argues that its refusal to move for a downward departure was not based on the quality of Floyd's assistance, but rather on the fact "that the maximum possible sentence . . . the defendant could receive under the terms of the plea agreement was far below what the government believed the guideline range to be" pursuant to the indictment. Appellant's Br. at 7.

The Government states that because no PSR was available at the time it drafted and signed the plea agreement, it "had no means of weighing the value of [Floyd's] cooperation against the charge bargain that Floyd already received." Appellee's Br. at 15. When it learned that the sentence calculated for Floyd in the PSR was only one-sixth as long as it could have been had she been convicted as charged in the indictment, it decided not to move for a downward departure.

## III.

We have previously held that "whether the <u>government</u> violated the terms of a plea agreement is a question of law subject to <u>plenary review</u>." <u>United States v. Rivera</u>, 357 F.3d 290, 294 (3d Cir. 2004) (emphasis in original) (citation and

4

quotation marks omitted). That holding is consistent with our earlier analysis in United States v. Isaac, 141 F.3d 477, 482 (3d Cir. 1998), where we stated that "plea agreements are contractual in nature." We explained that when a "plea agreement contemplates a motion [for a downward departure] . . . the district court is free to apply contract principles to determine whether the agreement has been satisfied." Id. The district court, although cautioned not to "interfere with the prosecutorial discretion that . . . Congress intended United States Attorneys to exercise," id. at 483-84, must be satisfied that the Government's position is "based on an honest evaluation of the assistance provided and not on considerations extraneous to that assistance." Id.

The defendant bears the burden of establishing by a preponderance of evidence that the Government has violated the plea agreement. United States v. Huang, 178 F.3d 184, 187 (3d Cir. 1999). The court must determine "whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." United States v. Nolan-Cooper, 155 F.3d 221, 236 (3d Cir. 1998) (citation and quotation marks omitted). Any ambiguities in the agreement must be construed in favor of the defendant; in "view of the government's tremendous bargaining power [courts] will strictly construe the text against it when it has drafted the agreement." United States v. Baird, 218 F.3d 221, 229 (3d Cir. 2000).

The plea agreement in this case stated:

The defendant has agreed to cooperate with the United States. Upon completion of the cooperation, if the United States believes the defendant has provided "substantial assistance". . . the United States may request the Court to depart below the guideline range when fixing a sentence for this defendant. In the event that the defendant renders substantial assistance, the United States specifically reserves the right to make a specific recommendation of a term of months to the

5

District Court.  However, the defendant acknowledges that the United States may decline to exercise its discretion and recommend a departure if the defendant breaches any of the provisions of this Agreement, or commits any other offense while awaiting plea or sentencing.

App. at 73 (emphasis added).

Under contract law, the court must read Floyd's plea bargain in a manner that gives meaning to each provision. Under such a reading, the phrase "may request" cannot signify that the Government has complete discretion in determining whether to move for a downward departure because such a reading would render superfluous the sentence that states, "In the event that the defendant renders substantial assistance, the United States specifically reserves the right to make a specific recommendation of a term of months to the District Court."  If the phrase "may request" in the plea agreement were to signify complete discretion, then the sentence specifying the circumstances under which the Government may decline to exercise its discretion ("the defendant acknowledges that the United States may decline to exercise its discretion and recommend a departure if the defendant breaches any of the provisions of this Agreement, or commits any other offense while awaiting plea or sentencing") would be entirely unnecessary; there would be no need for the Government to specify specific circumstances in which it could decline to exercise its discretion if it were able to decline to do so at any time. See, e.g., Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 169 (3d Cir. 1987) (noting that "a contract should be read so as to give meaning to all of its terms when read as an entirety").  For the "may decline" clause to have any significance, it must constitute an exclusive list of the circumstances under which the Government can decline to exercise its discretion.

Analyzing similar limiting language in the criminal context, we have interpreted a plea agreement providing that "if defendant engaged in criminal conduct after signing the plea

6

agreement, the government could use any information supplied by defendant against him" to mean, by "negative implication, . . . [that] the government agreed as a general matter not to use to the defendant's detriment information obtained cooperatively." Baird, 218 F.3d at 230. Similarly, by negative implication, if Floyd did not breach the agreement, the Government should have exercised its discretion and recommended a downward departure so long as Floyd's assistance was substantial. See United States v. Hernandez, 17 F.3d 78, 82 (5th Cir. 1994) (interpreting a similar provision in a plea agreement and remanding for a hearing on the "degree of discretion, if any, the parties intended for the government to retain by the use of the permissive word 'may'"). The court in Hernandez expressed "serious doubts that either party meant for the government to retain unbridled discretion merely by using that word." Id. at 83. Therefore, by the plain language of the agreement, Floyd reasonably expected that the Government would consider her assistance and, if her assistance was valuable and she did not commit other crimes or otherwise violate the agreement, the Government would move for a downward departure.

Although the Government reserved the right not to recommend a downward departure "if the defendant breach[ed] any of the provisions of this Agreement, or commit[ted] any other offense while awaiting plea or sentencing," and also reserved the right to recommend a departure of a specific number of months, the Government did not reserve the right not to recommend a downward departure on the ground that the charge bargain turned out to be more favorable than it had originally anticipated. The Government's explanation for its failure to recommend the downward departure does not meet the good faith requirement imposed by this court in Isaac because it is based on considerations extraneous to the assistance provided by Floyd.[1] The good faith requirement in Isaac required the

---

[1] The Government states that it based its decision not to recommend a downward departure not only on the charge bargain, but also on Floyd's "diminishment of her own criminal activity and the fact that it was difficult when she was interviewed to get a

7

straight answer to a question from her." Supp. App. at 25-26. However, Floyd was given a deduction for accepting responsibility and the transcript at sentencing makes clear that the Government's primary consideration in refusing a recommendation for a downward departure was "the significant charge bargain." App. at 109.

The prosecutor stated:

> I'd like to place on the record what happened here with respect to a motion for downward departure. I did submit a motion for downward departure to my supervisors. They looked at the fact that Ms. Floyd's sentencing guidelines range would have been 292 to 365 months but for the fact that she had a charge bargain. They said that the charge bargain was obviously a very significant charge bargain here and declined to authorize the motion for downward departure.
>
> When Mr. Abom pointed out to me or reminded me that his client had spoken with Steven Smith just prior to his guilty plea here in court, and I had frankly forgotten that, I went to my supervisors again and said although I don't know for sure, her speaking to him probably did at least have some influence on his decision to plead guilty, does that change the office's feeling with respect to a motion for downward departure here, and my supervisors said no, it did not.
>
> I frankly have to say that I did have some concerns and I frankly had to tell my supervisors about this, about Ms. Floyd's diminishment of her own criminal activity and the fact that it was difficult when she was interviewed to get a straight answer to a question from her. On the other hand, I did point out to them that she had provided us information concerning Steven Smith and so on and so forth, and it was their decision, given the custody range she would have otherwise have faced, and the significant charge bargain

Government to evaluate Floyd's assistance without reference to the charge bargain.

The Government's argument, that it did not anticipate the PSR's determination of the sentence Floyd would have received if she had been convicted at trial of all of the counts in the indictment, is essentially an attempt to avoid performance of a contract based on a unilateral mistake. Although it lacked the PSR, the Government entered the plea bargain aware that it possessed limited knowledge of what the potential Guideline range would be.[2] Given the Government's knowledge of the risk it was taking, the Government cannot now refuse to perform the contract. Instead, it is obliged to consider whether Floyd's assistance merited a downward departure.

Floyd relied on the Government's promise that it would consider making a motion for a downward departure, and she traveled from South Carolina to Harrisburg, Pennsylvania to speak with her co-defendant and ex-boyfriend Steven Smith. Smith was also the father of Floyd's child. According to her testimony, Floyd went to Harrisburg to convince her co-defendants to plead guilty rather than going to trial, thus saving the Government's resources. She stated, "I asked [Steven

that she already had, that further downward departure was not warranted.

Supp. App. at 24-26.

[2] Moreover, the Government knew that by changing her plea, Floyd's statutory maximum term of imprisonment would be 60 months. When Floyd changed her plea, she was no longer subject to the guideline range applicable to offenses dismissed by the Government. In this respect, the Government's reliance upon the PSR's determination of the sentence Floyd would have received is a non sequitur because that calculation was totally irrelevant. Floyd's plea agreement, drafted and approved by the Government, foreclosed the possibility that she would be subject to any period of imprisonment greater than 60 months.

Smith], 'if you love your son as you say you do, admit to your guilt. Truth is a virtue. You have to tell them what you did.'" Supp. App. at 23.

The terms of Floyd's plea agreement promised that in exchange for substantial assistance, the Government would recommend a downward departure. Such agreements are standard operating procedure in the criminal justice system. Because these agreements are common, it is crucial that they be clear to both parties. The agreement here, both under the technical rules of contract interpretation and by what a lay person would understand to be its purpose, offered Floyd the hope of a downward departure from the sentencing guideline range for the crime covered by the agreement. Floyd is entitled to an evidentiary hearing on whether her assistance, without reference to her charge bargain, was substantial enough to warrant a motion for a downward departure by the Government. For that reason, we will vacate the sentence and remand for an evidentiary hearing.