**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0732n.06

No. 12-2308

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 08, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | **OPINION** |
| RAFAEL MURREY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

**Before: COLE and McKEAGUE, Circuit Judges; and ZOUHARY, District Judge.**[*]

**ZOUHARY, District Judge.** Defendant-Appellant Rafael Murrey ("Murrey") appeals the 260-month, below-Guidelines sentence imposed by the district court for his participation in a drug-trafficking conspiracy. Murrey pled guilty, without the benefit of a plea agreement, to four counts charged against him in a superseding indictment. Murrey's chief complaint on appeal (and the subject of numerous motions and hearings in the court below) is that the Government did not file a substantial assistance motion under U.S.S.G. § 5K1.1, withdraw its 21 U.S.C. § 851 information, or otherwise move for a downward departure. Murrey challenges the procedural reasonableness of his sentence, and the district court's refusal to hold an evidentiary hearing. For the reasons explained below, we affirm the judgment of the district court.

_____

[*]The Honorable Jack Zouhary, United States District Court for the Northern District of Ohio, sitting by designation.

1

## BACKGROUND

In December 2009, a grand jury returned a superseding indictment charging Murrey and four co-defendants with certain drug trafficking crimes. Murrey faced four counts, including two counts of attempted possession and conspiracy with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(A), and two counts of assaulting, resisting, or impeding federal law enforcement officers in violation of 18 U.S.C. § 111. In light of Murrey's prior drug convictions, the Government filed a notice for a sentencing enhancement, pursuant to 21 U.S.C. § 851, providing a mandatory minimum sentence of twenty years imprisonment.

The charges stemmed from a Drug Enforcement Administration ("DEA") investigation uncovering a conspiracy to transport large shipments of cocaine and heroin from the Chicago area to the Detroit area for distribution. During the course of the conspiracy, the Government estimates that more than 500 kilograms of cocaine was sold for approximately $15 million. Murrey and the Government stipulated that he was responsible for at least 150 kilograms.

In December 2008, DEA agents attempted a reverse-sting operation as part of their investigation. A confidential informant arranged to deliver 40 kilograms of cocaine to Murrey. During the exchange, police attempted to arrest Murrey, but he took off in his car, with one DEA agent still holding on to the car door. Murrey hit a DEA car as he fled and then led the DEA agents on a high-speed chase through the streets of Detroit, escaping capture until his arrest more than nine months later in September 2009.

Before pleading guilty in May 2011, Murrey filed a motion to compel the Government to file a U.S.S.G. § 5K1.1 motion for a downward departure. Murrey argued the Government refused to

2

file such a motion because the information he provided involved state rather than federal criminal activity. The Government responded that Murrey was actually objecting to the Government's refusal to withdraw the 21 U.S.C. § 851 information or to file a motion pursuant to 18 U.S.C. § 3553(e), because those motions are the only means by which the district court could depart to a sentence below the twenty-year mandatory minimum imposed by 21 U.S.C. § 851.

The district court denied Murrey's motion, finding he had not made a threshold showing that the Government's decision resulted from an unconstitutional motive or an irrational decision, also noting that the information Murrey provided had not resulted in the issuance of a warrant, arrest, or prosecution. Murrey filed a motion to reconsider, attaching letters from two Detroit police officers stating Murrey had supplied them with information regarding a crime, and requesting the district court hold a hearing "to take testimony and evidence" regarding his assistance to police. The district court similarly denied that motion.

Four days prior to the start of his trial, Murrey pled guilty, without a plea agreement, to all four counts in the superseding indictment. During the May 2011 hearing, the district court explained to Murrey the length of imprisonment he was facing under the Guidelines, including a mandatory minimum of twenty years, and that the Government did not consider any information he provided up to that point to be substantial assistance under U.S.S.G. § 5K1.1 or otherwise worthy of a downward departure.

Murrey pled guilty to the four counts, and was counseled he could "take more time to think about whether he wants to cooperate and provide substantial assistance to the United States Attorney's Office prior to sentencing." If Murrey provided substantial assistance, the Government

3

indicated it would be "willing to talk at that point about reduction possibly and the Guidelines, but as of right now he's going to plead to the Superceding Indictment with no agreement with the United States Attorney's Office." The prosecutor further explained that "if Mr. Murrey decides to cooperate, we would offer him 50% off based upon substantial assistance, which would be in the United States Attorney's Office discretion, and at that point he'd be looking at half of the 262 to 327 [months] or approximately 131 to 163 [months]," which would include withdrawal of the enhancement under 21 U.S.C. § 851.

In June 2012, more than a year after Murrey entered his guilty plea, the district court held a sentencing hearing. The Presentence Report set Murrey's offense level at 35 and criminal history category at VI. The Guidelines provided a sentencing range of 292 to 365 months, with a mandatory minimum of twenty years imprisonment.

During the sentencing hearing, Murrey requested an evidentiary hearing to allow him "to make a record to show the degree and details of cooperation." The district court denied the request because Murrey was "not prepared to make a record here or offer of proof that the Government had an unconstitutional motive," and there was "nothing for me to think about or rule on with respect to his cooperation and I don't think that a record is necessary here."

Murrey believed the Government refused to allow him to escape the mandatory minimum as retaliation for attempting to run over the DEA agents during the sting operation and because the DEA suffered embarrassment by Murrey's ability to elude capture for nine months. The district court again found this proffered rationale, even if true, did not "rise to the level of an

unconstitutional motive" and that additional testimony was unwarranted. The district court then continued the hearing to allow Murrey additional time to review the PSR.

When the hearing reconvened, Murrey argued the assistance he had provided to law enforcement with respect to other crimes warranted a downward variance from the Guidelines range. The district court found that although Murrey's "efforts did not rise to the level of the Government making a 5K motion on behalf of Mr. Murrey, the Court can certainly take his efforts to cooperate into consideration" under § 3553(a), which "operate[d] in his favor."

Murrey also argued for a below-Guidelines sentence because, among other reasons, Murrey was a "staple of the community" and had "contributed to the community" through the businesses he started and financial assistance he provided to others less fortunate than he. During his allocution, Murrey made the following statement:

> They [the Government] don't know all about the people I had helped. They don't know all about the people who I helped finish school. They don't know about old people who I helped keep their utilities on. They won't know about the people who I gave a place to live. They won't know about the people who I gave annual picnics to, family reunions and families with sickness and other problems and they won't know about the funerals I paid for for people that didn't have no money at all.

The district court, in its consideration of the § 3553(a) factors, stated that while Murrey attempted to give back to the community, that assistance was tainted by his involvement in drug trafficking:

> It does appear that as a business owner, as a business owner in the city of Detroit he did attempt to help, did in fact help a number of people and that is all to his credit. The problem is that all that helped just to the extent that it involved spending money and giving money and helping people with – when they needed help with debt. All of that is perhaps tainted by the source of the money and the source of the money that Mr. Murrey had to operate came from his involvement in drug activity.

5

The district court imposed a below-Guidelines sentence of 260 months. On appeal, Murrey argues his sentence is procedurally unreasonable because the district court denied his request to make a further record of the Government's alleged improper motives, and neglected to consider his substantial assistance as grounds for a downward variance, ruling instead on erroneous facts about the source of money Murrey used to help the less fortunate in his community.

## ANALYSIS

### PROCEDURAL REASONABLENESS OF MURREY'S SENTENCE

This Court reviews a district court's sentencing determination "under a deferential abuse-of-discretion standard" for reasonableness, which has both a procedural and a substantive component. *Gall v. United States*, 552 U.S. 38, 41 (2007). A district court abuses its sentencing discretion if it commits a significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* at 51. Murrey alleges the district court committed three procedural errors in imposing his below-Guidelines sentence.

### 1.     Substantial Assistance Hearing

Murrey asserts the district court erred when it declined to conduct a hearing on the Government's refusal to file a § 5K1.1 motion. Similarly, § 3553(e) empowers district courts, "[u]pon motion of the Government," to impose a sentence below the statutory minimum to reflect a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense."

6

Judicial review of the Government's decision whether to file a substantial assistance motion is limited to unconstitutional motives. *United States v. Moore*, 225 F.3d 637, 641 (6th Cir. 2000). In *Wade v. United States*, 504 U.S. 181 (1992), the Supreme Court held that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive . . . . , say, because of the defendant's race or religion." *Id.* at 185–86. A district court may also have authority to review "if the prosecutor's refusal to file a substantial-assistance motion is not rationally related to any legitimate Government end." *United States v. Davenport*, 465 F. App'x 500, 503 (6th Cir. 2012) (citing *Chapman v. United States*, 500 U.S. 453, 464–65 (1991)). Review for bad faith, however, is not permitted. *Moore*, 225 F.3d at 641; *see also United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

A defendant is not entitled to discovery, an evidentiary hearing, or any remedy simply by claiming that substantial assistance has been provided. *Wade*, 504 U.S. at 186. Nor do "generalized allegations of improper motive" warrant such discovery proceedings. *Id.* Rather, a defendant has a right to such a hearing "only if he makes a substantial threshold showing of an unconstitutional motive." *United States v. Bagnoli*, 7 F.3d 90, 92 (6th Cir. 1993).

Murrey did not make this threshold showing of an illegitimate or unconstitutional motive. Even accepting as true Murrey's proffered reason -- that the DEA agents were mad at him for nearly running them over and his escape -- this alleged rationale does not demonstrate an unconstitutional or illegitimate motive. When the district court specifically asked Murrey what evidence he had of an unconstitutional motive, he had no answer. Further, the record reflects legitimate reasons for the

7

Government's refusal. Accordingly, the district court did not commit procedural error when it denied Murrey a hearing.

### 2. Substantial Assistance Under § 3553(a)

Murrey contends that by denying his evidentiary hearing request, the district court did not adequately consider his substantial assistance arguments as part of its analysis under § 3553(a). However, the record reflects otherwise. When a defendant "raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). District courts consider, in support of a Guidelines variance under § 3553(a), the same information that was offered unsuccessfully for a downward departure motion. *See United States v. Blue*, 557 F.3d 682, 687 (6th Cir. 2009) ("[E]ven absent a Section 5K1.1 motion the court might have considered [defendant's] allegedly substantial assistance in the context of the Section 3553(a) factors.").

During sentencing, the district court specifically stated it would, "as has been asked by [defense counsel], take [Murrey's assistance] into account as it considers the 3553 factors," and noted that the assistance "operates in his favor, although no 5K motion was filed." Murrey argues this consideration by the district court falls short because it did not hold an evidentiary hearing to learn all the details of his cooperation and the risks posed to him and his family by such cooperation. However, as discussed above, such details are not properly within the scope of a § 5K1.1 hearing. Further, nothing precluded Murrey from describing the extent of his assistance which, in fact,

defense counsel did during the sentencing hearing. The district court concluded this assistance weighed in Murrey's favor for a downward variance.

Finally, the refusal to grant an evidentiary hearing did not preclude Murrey from showing his post-arrest rehabilitation. In his briefing to this Court, Murrey notes that he "was not the same person in 2008 who was driven by greed and addiction" and that he "utilized the time free on bond, between his plea and sentencing, to demonstrate that he can thrive as a law abiding citizen" and that he was "able to self-rehabilitate from drug use and remain drug-free for nearly three years from his arrest until his sentencing." Murrey does not explain how the district court's refusal to conduct an evidentiary hearing about the Government's motives for refusing to file a substantial assistance motion precluded him from making these variance arguments. Again, a review of the sentencing transcript reveals that Murrey's counsel did allude to these considerations.

### 3.       Source of Financial Assistance to Others

Murrey argues his sentence was procedurally unreasonable because the district court relied on inaccurate information that his drug trafficking profits partly funded his charitable gifts. However, as Murrey concedes in his briefing, because he did not object at the time of sentencing, this Court reviews his sentence for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). This requires Murrey to show (1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of his case. *Id.* Murrey cannot clear the first hurdle.

Murrey contends the district court erred by commenting that "[a]ll of that [giving money to assist others] is perhaps tainted by the source of the money and the source of the money that Mr.

Murrey had to operate came from his involvement in drug activity." But Murrey's generosity in giving back to the community, as a product of drug trafficking proceeds, is supported by the record.

The PSR includes Murrey's employment and financial history, reflecting a monthly net income of $2,000, supplemented with snow removal that earned approximately $8,000–10,000 annually. His monthly net cash flow was $757, and his most recent income tax return filed in 2008 showed net operating losses of $21,814. Further, during the sentencing hearing, Murrey told the district court he became involved in the conspiracy for the "fast money." In sum, Murrey made a modest income from legitimate sources, yet professed to contribute generously to those in need. It was not clear error for the district court to infer that the source of some, if not much, of Murrey's "generosity" was drug money.

Murrey also exaggerates the nature of the district court's statement. The district court specifically noted it had "read the numerous letters of support" that were submitted on Murrey's behalf, recognizing that "as a business operator in the city of Detroit he did attempt to help, did in fact help a number of people and that is all to his credit." The district court did not, as Murrey contends, conclude "all of the good deeds accomplished by Mr. Murrey were tainted by drug money." The district court simply noted that it could not divorce Murrey's help to others from his involvement in drug trafficking.

## EVIDENTIARY HEARING DENIAL

A district court's refusal to hold an evidentiary hearing is reviewed for an abuse of discretion. *United States v. Kuehne*, 547 F.3d 667, 693 (6th Cir. 2008).

Even though this Circuit has expressly held that "bad faith" is not a basis for a court to review the Government's failure to file a substantial assistance motion, *Moore*, 225 F.3d at 641, Murrey contends the district court should have permitted him an opportunity to develop evidence of the Government's alleged bad faith because there is a split among the circuits on this issue. *Compare Moore*, 225 F.3d at 641 (precluding bad faith review); *United States v. Urbani*, 967 F.2d 106, 110 (5th Cir. 1992) (same); *United States v. Burrell*, 963 F.2d 976, 984–85 (7th Cir. 1992) (same); *United States v. Forney*, 9 F.3d 1492, 1502 n.5 (11th Cir. 1993) (same) *with United States v. Goroza*, 941 F.2d 905, 908 (9th Cir. 1991) (holding that "section 5K1.1's requirement that departure be premised on a government motion might not apply if the prosecution has acted with bad faith or arbitrariness that might conceivably present a due process issue") (internal quotation marks omitted). Cases from other circuits, cited by Murrey, discuss bad faith when the parties have, unlike the case here, a plea agreement in place because the plea agreement "includes an implied obligation of good faith and fair dealing." *United States v. Jones*, 58 F.3d 688, 692 (D.C. Cir. 1995). *See also United States v. Alegria*, 192 F.3d 179, 187 (1st Cir. 1999); *United States v. Leonard*, 50 F.3d 1152, 1157 (2d Cir. 1995); *United States v. Floyd*, 428 F.3d 513, 515 (3d Cir. 2005).

Notwithstanding some distinctions among circuits on this issue, the district court had no obligation to ignore precedent of this Circuit and grant Murrey an evidentiary hearing. Reported panel decisions are binding on subsequent panels. *See Valentine v. Francis*, 270 F.3d 1032, 1035 (6th Cir. 2001). The denial of a hearing was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court judgment.