**UNITED STATES of America,**
**Appellant**

v.

**Oyton A. WILLIAMS.**

**No. 05–4153.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 18, 2007.

Filed Dec. 31, 2007.

---

Christopher J. Christie, United States Attorney, George S. Leone (Argued), Chief, Appeals Division, Newark, NJ, Attorneys for Appellant.

Frank P. Arleo (Argued), Jo Ann K. Dobransky, Arleo & Donohue, L.L.C., West Orange, NJ, Attorneys for Appellee.

Before: SLOVITER, SMITH and WEIS, Circuit Judges.

### OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal raises an issue that we have not previously decided: what standard should be applied when analyzing a claim that a *defendant* has breached a plea agreement.

### I.

Oyton Williams, who was charged by the United States with knowingly and intentionally possessing with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2, pled guilty pursuant to a written plea agreement. The plea agreement stated, inter alia, that neither party would argue for an upward or downward departure not specified in

the agreement. According to the Pre-Sentence Report ("PSR") prepared by the United States Probation Office, Williams' United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range for the offense of conviction was 168–210 months imprisonment. At sentencing, Williams' counsel argued for downward departures. The Court granted the request and imposed a sentence of 120 months imprisonment. The government appeals Williams' sentence, arguing that his requests for downward departures breached his promises set forth in the plea agreement.

## A.

### Procedural Background

On April 23, 2004, following surveillance and receipt of information provided by a confidential informant, federal and state officers approached Williams in Newark, New Jersey, as he was parking his automobile. As the law enforcement officers prepared to search Williams, he told them that he had cocaine stored inside his vehicle. Following appraisal of his *Miranda* rights, Williams gave the officers consent to search not only the vehicle but also his home, telling them that they would find cocaine and a gun in a locked bedroom closet. Officers recovered a quantity of cocaine from the car and, on searching his home, found a large quantity of cocaine, a .32 caliber handgun, additional ammunition and assorted drug packaging material from a locked closet in the children's room.

A laboratory report concluded that 306.49 grams of cocaine base were recovered from Williams.

Williams waived his right to indictment, and the United States filed an information against him in the United States District Court for the District of New Jersey. On March 22, 2005, Williams executed a written plea agreement with the government. He agreed that he would enter a guilty plea to a one-count information charging him with possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The government agreed not to bring further criminal charges in connection with the instant offense (thereby foreclosing potential charges relating to his possession of a firearm in connection with a drug trafficking crime, possession of a firearm by a convicted felon, and his previous felony conviction) that could have increased Williams' statutory minimum from ten years for the one-count information to twenty-five years.[1]

Schedule A of the plea agreement set forth the parties' agreement and a proposed calculation of Williams' sentence under the Guidelines. Paragraph 1 stated:

This Office and Williams recognize that the United States Sentencing Guidelines are not binding upon the Court. This Office and Williams nevertheless agree to the stipulations set forth herein, and agree that the Court should sentence

1. Under 18 U.S.C. § 924(c)(1)(A)(i), "any person who, during and in relation to any ... drug trafficking crime ..., uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime[,] be sentenced to a term of imprisonment of not less than 5 years."

Under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), the possession of a firearm by a person previously convicted of a felony is punishable by up to ten years imprisonment.

Under 21 U.S.C. § 841(b)(1)(A), the statute governing Williams' charged offense, the defendant is subject to a mandatory minimum term of imprisonment of ten years. If, however, the defendant commits a violation under § 841 "after a prior conviction for a felony drug offense," the defendant will be subject to a mandatory minimum term of imprisonment of twenty years.

Therefore, under the relevant statutes, the government could have sought punishment of at least twenty-five years imprisonment for Williams.

Williams within the Guidelines range that results from the total Guidelines offense level set forth below. This Office and Williams *further agree that neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level.*
App. at 30 (emphasis added). Paragraph 2 stipulated that the applicable Guidelines Manual was that which took effect on November 5, 2003.

The parties then stipulated that because the amount of cocaine base involved in Williams' offense was 306.49 grams, his base offense level would be 34 under U.S.S.G. § 2D1.1(c)(3). Second, they stipulated that the two-level increase under U.S.S.G. § 2D1.1(b)(1) applied because Williams possessed the above-noted firearm in connection with the offense. Third, they agreed that a three-level reduction under U.S.S.G. § 3E1.1 applied because Williams had accepted responsibility. Thus, the plea agreement set forth that Williams' "agreed total Guidelines offense level" was 33.

Williams and the government then agreed "not to seek or argue for any upward or downward departure or any upward or downward adjustment not set forth herein. The parties further agree that a sentence within the Guidelines range that results from the agreed total Guidelines offense level of 33 is reasonable." App. at 31.

Williams pled guilty on April 13, 2005. The Court advised him as it took the plea that "until a presentence report is completed, it is impossible for either the Court or your attorney to know precisely what sentence range will be prescribed by the guidelines[.]" App. at 52.

The PSR calculated Williams' total offense level to be at 33, just as the plea agreement had calculated. It also concluded that Williams had a criminal history category of III, based upon a 1992 drug conviction in county court at age twenty-two, a 1995 charge in Newark municipal court on resisting arrest that resulted in a suspended sentence, and a 2003 charge in Newark municipal court that also resulted in a suspended sentence. Those three offenses gave him two points each, resulting in six points total, which produced a criminal history category of III.

Under the Sentencing Guidelines then in effect, a criminal history category of III, combined with the total offense level of 33, resulted in a guideline range of 168–210 months imprisonment. The Probation Office identified no factors warranting departure from the Guideline range. Williams filed no objections to the PSR.

### B.

### Sentencing

Williams' sentencing was scheduled for August 2, 2005. On July 26, 2005, his counsel filed Williams' sentencing memorandum. Although Williams stated he did not dispute the suggested offense level of 33, he argued that he should be treated like a category II offender, rather than a category III offender. He asserted that U.S.S.G. § 4A1.3 supported downward departures for overrepresentation of criminal history and argued that his 1992 conviction, which occurred when he was twenty-two, was over a decade old, and that the two subsequent convictions were "relatively minor."

In addition, although Williams conceded that the Guideline range was 168 to 210 months imprisonment, he requested the District Court to depart downwardly from that range pursuant to U.S.S.G. Chapter 5.[2] To justify this departure, he pointed to

---

**2.** Chapter 5 delineates potentially applicable     offender characteristics that may provide a

the following factors: his serious illness with diabetes; the fact that his wife was also charged in connection with the offense; that he was a married father who supported three children; and that he was from a broken home and lacked guidance as a child.

Finally, in Williams' sentencing memorandum he argued for a variance under *Booker* and the factors set forth in 18 U.S.C. § 3553(a), asserting that, considering his relatively minor criminal history, his young children, the fact that he was formerly gainfully employed, and that he suffers from diabetes, "a more reasonable sentence is one below the heartland range and one more in line with the statutory mandatory minimum 10–year range." App. at 70–71.

In response, the government filed a sentencing letter noting that "[n]otwithstanding the stipulation to the contrary made by the defendant, the defendant filed a sentencing memo requesting a downward departure." App. at 75. It argued that the bases for Williams' requests for downward departures were untenable, noting that under the Guidelines lack of guidance as a youth or family ties are not relevant sentencing factors. The government also stated that § 3553(a) "militate[s for] a sentence within the stipulated guideline range," and that "[a]ccordingly, the defendant should be sentenced to at least 168 months in prison." App. at 77.

At the August 2, 2005 sentencing, Williams, through defense counsel, again raised an argument about his criminal history category. The District Court agreed with Williams' argument. It ruled that "[t]he defendant's motion, pursuant to 4A1.3, is granted," App. at 10, and that the Court would "grant a downward departure" reducing Williams "from a criminal history category three to a criminal history

category two." App. at 12. In doing so, the Court "dismissed" the two "municipal court matters," noting that one was approximately ten years old and the other two years old, and that they resulted in minor fines with no jail time assigned. App. at 10–11. As a result of the District Court's ruling that Williams' criminal history category overrepresented the seriousness of his criminal history or likelihood he would commit other crimes, Williams' guideline range was reduced from 168–210 months to 151–188 months imprisonment.

The Court then recognized that Williams was "seeking other downward departures," and acknowledged that the plea agreement included a commitment by Williams not to seek a downward departure. App. at 12. Williams' counsel argued that "if *Booker* says anything, I think what it did was give back to the courts the ability to say, well, I understand the guidelines that are now advisory, this is the heartland, this is where he'd be." App. at 14. Counsel continued, arguing that in a post-*Booker* world the Court could "put everything into the hopper, things that normally couldn't be considered under the guidelines, such as the health, the family ties and responsibilities ... now *Booker* requires the Court to do a reasonableness analysis, when you consider those things, you can depart even though we stipulated it." App. at 15.

In response, the Assistant United States Attorney argued that Williams did not deserve a downward departure. He actually had a job and a family unit and "still decided to deal drugs, had a gun with him as part of selling the drugs ... [and is] someone who made a decision based on nothing else except greed." App. at 16–17. The Court responded that Williams was "really not the guy to make that argument" regarding the severity of his crime and criminal history, because he did not

basis for such a departure (so-called "Chapter 5 Departure").

have "a terrible record." App. at 17. Williams spoke briefly, saying that he knew "what I did was wrong" but did not think "the guidelines ... fit the crime that I did." App. at 18.

The Court then imposed the sentence. It noted that, with an offense level of 33 and a criminal history category of II (as set by the Court), the Guideline sentencing range would be 151–188 months imprisonment. The Court, explaining that it took into account the nature and circumstances of Williams' offense, history and characteristics, and its discretion under 18 U.S.C. § 3553(a), set Williams' sentence at 120 months imprisonment. Following imposition of the sentence, the government noted its objection for the record to the sentence imposed.

## II.

On this appeal, we must decide the standard we should apply in analyzing whether a defendant has breached a plea agreement; whether Williams in fact breached the plea agreement; what is the appropriate remedy when a defendant breaches a plea agreement generally, and in this case specifically; and if there was a breach, whether we should remand for re-sentencing before the sentencing judge or a different judge.

The government argues that Williams' requests for (1) a downward departure under U.S.S.G. § 4A1.3 for overrepresentation of criminal history, (2) a downward departure under Chapter 5, (3) a request for a variance under *Booker*, and (4) a request for a specific sentence of 120 months, were all breaches of the plea agreement by which the parties agreed to a blanket prohibition on the seeking of any

departures.[3] Williams argues that he did not breach, because he was merely requesting the Court to reduce the calculation of his criminal history, rather than his offense level, and to apply the discretionary factors set forth in § 3553(a). He contends that the plea agreement did not stipulate a criminal history category, only an offense level of 33, and that the criminal history category was therefore open for argument to the Court. Williams emphasizes that in his requests for leniency he did not dispute that his agreed-upon offense level was 33. The government responds by pointing out that the language of the plea agreement stated that Williams was barred from seeking "*any* ... downward departure," App. at 31 (emphasis added), and Williams did, in fact, request the District Court to consider a downward departure.

### A.

### Legal Standard For Reviewing Alleged Breach of Plea Agreement by Defendant

Although this court has no reported decisions addressing an appeal by the government of a defendant's breach of a plea agreement, we have exercised de novo review over the question whether the government has breached the plea agreement. *United States v. Rivera,* 357 F.3d 290, 293–94 (3d Cir.2004).

In *Santobello v. New York,* 404 U.S. 257, 261–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the United States Supreme Court analyzed a plea agreement according to contract law principles. Santobello was charged with two felony counts related to gambling. The government agreed to per-

---

3. The government does not challenge the District Court's application of the § 3553(a) factors nor does it argue that the Court's decision to downwardly depart was unreasonable. *See United States v. Grier,* 475 F.3d 556, 571 (3d Cir.2007); *United States v. Cooper,* 437 F.3d 324, 332 (3d Cir.2006). Rather, the government frames its appeal solely in terms of Williams' alleged breaches in arguing for a downward departure.

mit him to plead guilty to a lesser included offense rather than the felony offenses, and agreed to make no recommendation regarding the sentence. Nonetheless, at sentencing the government recommended the maximum sentence. The Supreme Court concluded that the government breached the plea agreement, explaining that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. 495 (noting that a plea agreement is a bargained-for and negotiated exchange of promises).

■ In determining whether the government has breached a plea agreement, this court applies the same approach that the Supreme Court articulated in *Santobello.* We look to the well-established principle that "[p]lea agreements, although arising in the criminal context, are analyzed under contract law standards." *United States v. Nolan–Cooper,* 155 F.3d 221, 236 (3d Cir.1998).

■ However, we have cautioned that because a defendant gives up multiple constitutional rights by entering into a plea agreement, courts must carefully scrutinize the agreement to insure that the government has fulfilled its promises. *Rivera,* 357 F.3d at 294–95. "[I]n 'view of the government's tremendous bargaining power [courts] will strictly construe the text against [the government] when it has drafted the agreement.'" *United States v. Floyd,* 428 F.3d 513, 516 (3d Cir.2005) (quoting *United States v. Baird,* 218 F.3d 221, 229 (3d Cir.2000)). Thus, any ambiguities in a plea agreement must be construed against the government. *Id.*

Under contract principles, a plea agreement necessarily "works both ways. Not only must the government comply with its terms and conditions, but so must [the defendant]." *United States v. Carrara,* 49 F.3d 105, 107 (3d Cir.1995). We have observed that a defendant should not be permitted "to get the benefits of [his] plea bargain, while evading the costs ... and contract law would not support such a result." *United States v. Bernard,* 373 F.3d 339, 345 (3d Cir.2004) (concluding that defendant, who was contending on appeal that the District Court erred by applying a particular cross-reference under U.S.S.G. § 2L2.2(c), should be held to the terms of her plea agreement, which stated that the agreed-upon guideline should apply). "Under the law of this circuit, [a defendant] cannot renege on his agreement." *United States v. Cianci,* 154 F.3d 106, 110 (3d Cir.1998). When a defendant stipulates to a point in a plea agreement, he "is not in a position to make ... arguments [to the contrary]." *United States v. Melendez,* 55 F.3d 130, 136 (3d Cir.1995), *aff'd* 518 U.S. 120, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996). We have held that we have " 'no difficulty in holding [a defendant] to the plea agreement for he seeks the benefits of it without the burdens.'" *Cianci,* 154 F.3d at 110 (quoting *United States v. Parker,* 874 F.2d 174, 178 (3d Cir.1989)).

Applying those principles, it is clear that if we did not enforce a plea agreement against a breaching defendant, it would have a corrosive effect on the plea agreement process. We have little doubt that if the government had argued for an upward departure in this case, we would have concluded that the government breached the plea agreement. Because a plea agreement is a bargained-for exchange, contract principles would counsel that we reach the same conclusion when a defendant breaches a plea agreement as we would reach if the government breached. *See Ricketts v. Adamson,* 483 U.S. 1, 9 n. 5, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (noting that a plea agreement is a bargained-for exchange). If that were not the case, the government would have no meaningful re-

course if it performed its end of the agreement but did not receive the benefit of its bargain in return. *See United States v. Alexander*, 869 F.2d 91, 95 (2d Cir.1989) (stating the fundamental principle that "one party cannot be held to a bargain that the other party has breached"). That scenario would make the current system of plea agreements untenable because it would render the concept of a binding agreement a legal fiction. That result would be unworkable because our criminal justice system depends upon the plea agreement process. *See Santobello*, 404 U.S. at 261, 92 S.Ct. 495 (explaining why disposition of charges by plea agreements is an essential part of the judicial process).

We do not doubt that the government possesses tremendous bargaining power in the negotiation of plea agreements. That does not, in and of itself, make the plea agreement unenforceable. Our recognition that the government has a great deal of leverage in striking plea bargains is one reason why we construe ambiguities in such an agreement against the government. *Floyd*, 428 F.3d at 516. The relevant portions of Williams' plea agreement, however, are not ambiguous, and thus there is no reason to construe those portions against the government. After all, the government always has leverage, and yet we routinely enforce plea agreements in which defendants waive important constitutional rights, such as the right to appeal. *See United States v. Khattak*, 273 F.3d 557, 563 (3d Cir.2001) (enforcing waiver of appellate rights); *see also United States v. Gwinnett*, 483 F.3d 200, 202 (3d Cir.2007).

It is an important consideration in reviewing a plea agreement that a defendant generally reaps benefits by entering into such an agreement. *See Ricketts*, 483 U.S.

at 9 n. 5, 107 S.Ct. 2680 (observing that both parties may receive substantial benefits if the plea agreement so provides). In this case, the government agreed not to file a second offender information under 21 U.S.C. § 851. That could have increased Williams' statutory mandatory minimum penalty from ten years to twenty years because he has a prior felony conviction.[4] In addition, the government agreed not to charge Williams with the separate offense of possession of a firearm in connection with a drug trafficking offense under 18 U.S.C. § 924(c), which carries a consecutive mandatory minimum term of imprisonment of five years. As a result, by entering into the plea agreement with its stipulations, Williams received a statutory minimum fifteen years lower than that which he could have faced absent agreement with the government.[5]

Several courts of appeals presented with a claim that a defendant breached a plea agreement have applied basic principles of contract law to the analysis whether a breach occurred and the determination of the proper remedy. In *United States v. Ataya*, 864 F.2d 1324, 1325–26 (7th Cir. 1988), Ataya and the government had reached a plea agreement that included the joint undertakings that the government would dismiss one of the three charges against Ataya, he would plead guilty to the other two and he would cooperate, including testifying against a co-defendant. He declined to testify at a second trial, and the government filed a superseding indictment based on Ataya's breach of the plea agreement. He moved to dismiss the indictment, which the district court granted after holding a four-day hearing. On the government's appeal, the Seventh Circuit stated that it "has long recognized that a plea agreement is a con-

---

4.  *See supra* n. 1.

5.  The government also agreed to stipulate to a three-level reduction for acceptance of responsibility.

tract ... but a contract in which special due process concerns for fairness and the adequacy of procedural safeguards obtain. [citing *Santobello* ] ... One requisite safeguard of a defendant's [due process] rights is a judicial determination, based on adequate evidence, of a defendant's breach of a plea bargaining agreement. The question of a defendant's breach is not an issue to be determined unilaterally by the government." *Id.* at 1329–30 (certain internal citations and quotation marks omitted).

The Seventh Circuit reversed the dismissal of the indictment, concluding that the district court's finding was clear error, because "[i]n reading the instant plea agreement and reviewing the record at hand, we are ... firmly convinced that the defendant substantially breached an unambiguous provision in the plea agreement accepted by the court." *Id.* at 1330. It based its ruling on the proposition that the contractual obligations set forth in a plea agreement impose mutual obligations on both the government and the defendant.

The Court of Appeals for the Fourth Circuit was presented with a factual scenario somewhat similar to that before us here. In *United States v. Bowe*, 257 F.3d 336, 339 (4th Cir.2001), the defendant Bowe entered into a plea agreement with the government in which both parties agreed not to seek any departures. In exchange, the government agreed not to bring further charges against Bowe. Despite the agreement, at sentencing Bowe, through counsel, made a departure motion based upon his mental condition and sought to introduce evidence to support the motion. The government then requested that the plea agreement be declared null and void, but the district court refused to do so and proceeded with sentencing. On appeal, the Fourth Circuit concluded that, "[i]n denying the [g]overnment's motion to have the court declare the plea agreement null and void, the dis-

trict court erroneously permitted Bowe's counsel to violate the express terms of the plea agreement." *Id.* at 347. It stated, "[w]e conclude that the court erred in denying the [g]overnment's motion to nullify the plea agreement after the defense sought permission to present evidence for the purpose of persuading the court to impose a sentence that departed from the Sentencing Guidelines. Upon remand, the court should determine whether the plea should be set aside, or whether a sentence should be imposed within the Sentencing Guideline range." *Id.* Thus, the court of appeals applied the same principle in a defendant breach case that it would have applied in a government breach case. *See also Alexander*, 869 F.2d at 91 (holding that government is entitled to similar remedies in an appeal of a defendant's breach of a plea agreement as a defendant would be in a government breach appeal).

▪ Accordingly, we hold that we will apply the same standard of review in considering a defendant's breach of a plea agreement as we would apply in a government breach case. We will review the question whether a defendant breaches his plea agreement de novo, and will impose the burden on the government to prove the breach by a preponderance of the evidence. *See Floyd*, 428 F.3d at 516; *Rivera*, 357 F.3d at 293–94. Furthermore, we will analyze the issue whether a defendant has breached a plea agreement according to the same contract principles that we would apply in analyzing a government breach, including the principle that we will construe ambiguities in the agreement against the government. *See, e.g., Rivera*, 357 F.3d at 294–95.

### B.

### Whether Williams Breached the Plea Agreement

▪ In determining whether Williams breached his plea agreement, we examine

the plain meaning of the agreement itself and construe any ambiguities in the agreement against the government as drafter. *See United States v. Gebbie,* 294 F.3d 540, 545 (3d Cir.2002) ("Plea agreements are contractual in nature, so we begin our analysis as we would with any contract. We examine first the text of the contract ... [the] plea agreement."); *Floyd,* 428 F.3d at 516 (construing ambiguities in the plea agreement against the government). The essential question is whether the alleged breaching party's "conduct is consistent with the parties' reasonable understanding of the agreement." *United States v. Hodge,* 412 F.3d 479, 485 (3d Cir.2005) (citation and quotation marks omitted).

■ Here, paragraph 7 of the plea agreement stated that "[t]he parties agree not to seek or argue for any upward or downward departure or any upward or downward adjustment not set forth herein." App. at 31. Although the parties recognized in paragraph one of the agreement that the United States Sentencing Guidelines were no longer binding, Williams nevertheless agreed "to the stipulations set forth" in the plea agreement. App. at 30.

Even though, as the parties recognized in the agreement, the Guidelines are not mandatory, the stipulations in the agreement unambiguously prohibited Williams from making downward departure motions. Therefore, Williams breached the plea agreement at the August 2, 2005 sentencing and in counsel's July 26, 2005 sentencing memorandum. First, Williams argued that a criminal history category III overstated his criminal history, and asked the Court to grant him a U.S.S.G. § 4A1.3 departure so that he could be treated as a category II offender. Second, although Williams agreed that his Guideline range was 168–210 months imprisonment, he argued that the District Court should depart downwardly from that range because of his troubled background, poor health, and family issues, under U.S.S.G. § § 5H1.4, 5H1.5, 5H1.12, and 5K2.0 ("Chapter Five departure"). Third, Williams asked for a *Booker* variance under § 3553, arguing that "a more reasonable sentence is one below the heartland range." App. at 70–71. Finally, Williams specifically requested a sentence of 120 months, which was below the sentence of any Guideline range resulting from an offense level of 33. *See* U.S. Sentencing Guidelines Manual, Sentencing Table (2003). In each instance, Williams breached the plea agreement which unambiguously prohibited him from asking for a downward departure or adjustment and which provided that Williams agreed that a sentence resulting from an offense level 33 was reasonable.

Williams makes two arguments why he did not breach the plea agreement. First, he states that in a post-*Booker* sentencing regime, defendants should be able to argue for departures and non-Guideline sentences, especially because the sentencing courts are required to consider the factors set forth in § 3553 to determine whether a non-Guideline sentence is appropriate. Second, he contends that he was not precluded from arguing what the appropriate criminal history category should have been because the plea agreement did not stipulate to a specific criminal history category.

Both arguments fail. First, nothing in the plea agreement prevented the District Court from departing downwardly or imposing a non-Guideline sentence on its own accord. The plea agreement did not purport to restrict the Court's duty to consider the § 3553 factors. Rather, the agreement merely prohibited Williams from making arguments regarding those issues. If Williams wanted to make a departure argument, it would have been prudent to negotiate a different agreement with the

government. Nor can he rely on *Booker* because he agreed to the plea agreement three months after *Booker* was decided. The District Court advised Williams during his guilty plea colloquy that the Guidelines were advisory and not mandatory, and that the Court could impose a sentence higher or lower than that to which the parties stipulated in the agreement. Thus, the fact that *Booker* made the Guidelines advisory, and therefore enabled district courts to depart from the Guidelines, has no bearing on the fact that Williams agreed not to make such arguments.

Second, Williams' argument regarding criminal history is unpersuasive. He did not dispute that his criminal history was correctly calculated under the Guidelines to be a category III. Rather, he argued that, notwithstanding that proper calculation, he was entitled to receive a departure under the Guidelines on the ground that a criminal history category III overstated his criminal history. Thus, when Williams argued about his criminal history, he was explicitly seeking a departure notwithstanding that the plea agreement unambiguously prohibited departure requests. Indeed, U.S.S.G. § 4A1.3 is entitled *"Departures* Based on Inadequacy of Criminal History Category." U.S. Sentencing Guidelines Manual § 4A1.3, at 347 (2003) (emphasis added).

Moreover, Williams had agreed that a sentence imposed under offense level of 33 was reasonable. The dissent states that there was no stipulation with respect to the criminal history and emphasizes that the agreement only made specific reference to a stipulation regarding total offense level. However, the Guideline sentence is the result of the criminal history and the offense level. No criminal history category when paired with the agreed upon offense level of 33 produces a sentence as low as that which Williams requested, 120 months. Indeed, even if Williams were a criminal history category I, his sentencing range under the Guidelines would have been 135–168 months imprisonment.

The dissent also reasons that the District Court invited and allowed Williams' counsel to make arguments regarding departures at the sentencing hearing. In that respect, it is significant that counsel, on behalf of Williams, made arguments for departure even before the sentencing hearing. Williams' sentencing memorandum dated July 26, 2005 argued that Williams should receive departures for overrepresentation of criminal history, under Chapter 5, and under *Booker*. The District Court did not invite Williams' counsel to make those arguments in the sentencing memorandum. Williams' position at the sentencing hearing, therefore, was simply a continuation of that which he had already initiated in the sentencing memorandum. It is thus indisputable that, in doing so, Williams breached the plea agreement.

Finally, we emphasize again that our decision in no way reflects upon the discretion of the sentencing judge to issue a sentence the judge deems reasonable. This decision does not address the overall reasonableness of the sentence imposed, but simply addresses, under principles of contract law, the defendant's obligation to carry out the requirements of a plea agreement.

## C.

### Remedy

We turn to examine the appropriate remedy in this case.

█ Until this case, our court has only had occasion to consider the appropriate remedy when the government has breached a plea agreement. We have held that

" '[w]hen the government breaches a plea agreement, the general rule is to remand the case to the district court for a determination whether to grant specific performance or to allow withdrawal of the plea.' " *Rivera*, 357 F.3d at 297 (quoting *Nolan–Cooper*, 155 F.3d at 241). *See also United States v. American Bag & Paper Corp.*, 609 F.2d 1066, 1068 (3d Cir.1979). That same remedy has been applied when the defendant breaches a plea agreement. *See generally* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.2(e), at 60 (2d ed. Supp. 2007) ("[I]t is generally accepted that 'when a defendant breaches his plea agreement, the [g]overnment has the option to either seek specific performance of the agreement or treat it as unenforceable' (at least absent language in the plea agreement specifying fewer or other remedies).") (citation omitted). *See also Bowe*, 257 F.3d at 346 (determining that remedy of specific performance, plea withdrawal or other equitable relief is appropriate when a defendant breaches a plea agreement).

This court has observed that a defendant should not be permitted "to get the benefits of [his] plea bargain, while evading the costs ... and contract law would not support such a result." *Bernard*, 373 F.3d at 345. In *Alexander*, 869 F.2d at 95, the Second Circuit held that although the government is ordinarily entitled to the same remedies when a defendant breaches as a defendant would be entitled to if the government breaches, the government waived its right to rescind the plea agreement by proceeding with sentencing and specific performance was the only remedy that remained. This court faced with the same issue as that considered by the Second Circuit, ruled similarly. In *Nolan–Cooper*, 155 F.3d at 241, we stated that when the government breaches a plea agreement, the remedy would be "to remand the case to the district court for a determination whether to grant specific performance or to allow withdrawal of the plea and rescission of the plea agreement."

Nevertheless, in *Nolan–Cooper*, we held that there are instances when remand is not necessary and the appellate court should determine the remedy. In *United States v. Badaracco*, 954 F.2d 928 (3d Cir. 1992), this court concluded that because the defendant had already served a considerable portion of his custodial sentence, "permitting the withdrawal of his plea would be an empty remedy." *Id.* at 941. It followed that specific performance was the only adequate remedy. The *Alexander* decision presented another such instance. *Nolan–Cooper* presented yet another instance, as the non-breaching party, the defendant, sought specific performance because she did not want to withdraw her plea. We held that it was not necessary to remand to the district court to determine the remedy because the defendant had already chosen the preferred remedy: inasmuch as she did not want to withdraw her plea, we held the court should not impose a remedy against a non-breaching party's will. Moreover, the defendant sought only the remedy of specific performance, which we explained imposed a lesser burden than recision or withdrawal of the plea. We remanded for re-sentencing according to the plea agreement, i.e., we ordered the remedy of specific performance. *See id.*

The manner in which we have applied the general rule to a government's breach is instructive in fashioning an appropriate rule for application to a defendant's breach of a plea agreement. In the case of a government breach, we have allowed for an exception when the circumstances dictate that there is only one appropriate remedy for the defendant. Similarly, when the government requests specific performance at the hands of a defendant's breach, we recognize that resentencing un-

der the terms of the executed plea agreement might be the only appropriate remedy. In this case, the government does not seek withdrawal of the plea or rescission of the plea agreement; rather, the government seeks only specific performance of the plea agreement. Implicit in the government's request for specific performance is its assessment that resentencing is in its best interest. We see no reason to second guess this decision by the government and we see no need to burden the District Court with another hearing.

We will therefore remand this matter to the District Court so that the parties may specifically perform their obligations under the plea agreement, i.e., not to argue for any departures (which, we reiterate, does not preclude the District Court from exercising its own judgment as to the sentence).

The government has asked that we remand for re-sentencing to a judge other than the sentencing judge. In *Nolan–Cooper,* we stated that "[i]t is . . . the rule in this circuit that if specific performance is the applicable remedy, the defendant must be resentenced by a different district judge than the one who presided over the now-vacated original sentence." *Id.* Importantly, remanding to a different district court judge does not reflect upon the District Judge's prior decision. Rather, "[t]his result obtains irrespective of the fact that the need for resentencing was caused by the [breaching party] and is not attributable to any error by the sentencing judge." *Id.*

A sentencing judge could be influenced inadvertently by the breaching party's prior arguments when the case is remanded for re-sentencing. *See United States v. Hayes,* 946 F.2d 230, 236 (3d Cir.1991). Thus, the explanation for remanding to a different judge is that " 'compliance with the agreement is best insured by requiring resentencing before another district judge.' " *Id.* (quoting *United States v. Corsentino,* 685 F.2d 48, 52 (2d Cir.1982)); *see also United States v. Padilla,* 186 F.3d 136, 142–43 (2d Cir.1999) (remanding case to different judge for re-sentencing in order to "preserve the appearance of justice" even though court had no doubt sentencing judge could have re-sentenced fairly) (citation and quotation marks omitted).

We do not suggest that the District Court erred by granting the departure based upon overrepresentation of criminal history. The breach occurred when Williams made the argument for a departure and had nothing to do with the District Court's sentencing decision.

### III.

For the foregoing reasons, we will vacate the sentence imposed and remand to the District Court for re-sentencing before a different judge, pursuant to the plea agreement.

WEIS, Circuit Judge, Dissenting.

I agree with the majority that as a general matter a defendant should not be permitted to renege on a valid and clear sentencing stipulation and a plea agreement. But here there was no breach in arguing for a guideline departure on the criminal history and defendant presented his argument for a variance and mitigation under the guidelines with the permission of the District Court. The judgment should be affirmed.

The text of the plea agreement and events that occurred at the sentencing hearing lead to the conclusion that a remand to a different judge for re-sentencing is unnecessary. The government sets forth two grounds for its assertion that defendant violated the provisions of the plea agreement and stipulations. The first is that defendant agreed not to argue for a departure under the criminal history cate-

gory. The second is the defendant's alleged agreement not to request a downward variance and mitigation under the guidelines.[6] The alleged breaches are best considered separately.

## I.

The government's argument that defendant agreed not to argue for a reduction in the criminal history is not supported by the record and is contrary to a ruling by the District Court. In his statement of reasons for granting the departure, the district judge wrote, "The sentence departs below the guideline range pursuant to a defense motion based on the following reason for departure to which the government has objected and *not addressed in a plea agreement.*" (emphasis added). That ruling should end the matter. However, it is supported in the record.

The stipulations prepared by the United States Attorney's Office did not specifically prohibit argument on a guideline departure based on overstatement of the criminal history. Consequently, by asking to reduce the calculation for criminal history, defendant did not violate the stipulations or the plea agreement.

The relevant portions of the plea agreement support this conclusion. The parties agreed that "neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level [of 33]." They also stipulated "not to seek or argue for any ... downward departure or any ... downward adjustment not set forth herein."

The agreement also stated that "[t]o the extent that the parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence." Further, with respect to the defendant's criminal history category level, it is stipulated that "[t]he parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category."

Although the stipulations specifically quote the term *"total Guidelines offense level"* on no less than seven occasions, there is only one reference to the "criminal history category."

Two of the principal factors in guideline sentencing calculations are the "offense level" and the "criminal history category." The text of the stipulations makes it obvious that the focus of the plea agreement is on the "offense level." It is particularly significant that the stipulations studiously avoid any attempt to elaborate or even discuss the basis for the criminal history factor.

The stipulations' reference to the "range that results from the agreed total Guidelines offense level [of 33]" is ambiguous because a sentencing range is not determined solely by the offense level, but by a combination of that factor and the criminal history. At best, the stipulation is confusing.

Bearing in mind that the agreement drafted by the United States Attorney's Office must be construed in favor of defendant, *United States v. Baird*, 218 F.3d 221, 229 (3d Cir.2000), it is inescapable here that the parties intended to leave the question of criminal history open and permit argument on that issue by both parties. The open-ended permission to appeal the

---

**6.** The distinction between "variances" and "departures" has become common usage. A "variance" is a sentence that deviates from the guidelines range based on *Booker* and the sentencing factors listed in 18 U.S.C. § 3553(a). A "departure," on the other hand, is a sentence that differs from the guidelines range based on specific guidelines provisions that authorize such changes. *United States v. Gunter*, 462 F.3d 237, 247 n. 10 (3d Cir.2006).

District Court's finding on the criminal history makes it clear that argument on that factor is not foreclosed.

The right of appeal preserved by the stipulation implicitly, but no less forcefully, includes the right to present that issue to the district court. It is well established that a point not raised in the district court generally will not be heard by an appellate court. *See United States v. Merlino*, 349 F.3d 144, 161 (3d Cir.2003) (an "argument . . . not raised below . . . is not cognizable on review unless it constitutes plain error."). If the parties were prohibited from raising the matter in the district court, they would not likely be heard on appeal. Hence, denial of the right of argument before the sentencing court would cripple if not destroy the right to appeal.

The deafening silence in the stipulations as to the criminal history is both as eloquent and persuasive as was the fact that the watchdog did not bark.[7] I agree with *United States v. Giorgi*, 840 F.2d 1022 (1st Cir.1988), where the Court said, "Given the relative interests implicated by a plea bargain, we find that the costs of an unclear agreement must fall upon the government. . . . [T]he government must shoulder a greater degree of responsibility for lack of clarity in a plea agreement." *Id.* at 1026.

Here the sentencing judge was well aware of the stipulations and summed up the situation at the sentencing hearing, saying, "well, I suppose the way to look at this is as follows: The criminal history category doesn't fall within [the terms of the plea agreement], I suppose, because you stipulated to the offense level, not to the criminal history category." The defense attorney replied, "That's correct."

I would hold, in accordance with the District Court's ruling, that defendant was permitted to argue for a reduction of the criminal history category. Defendant did not violate the plea agreement in asking for a departure under the guidelines.

## II.

The government relies on its alternate argument that defendant violated the plea agreement when he argued mitigating factors under 18 U.S.C. § 3553(a) and Chapter 5 of the guidelines. Defendant agreed "not to seek or argue for any . . . downward departure or any . . . downward adjustment not set forth [in the plea agreement]." In another stipulation, defendant agreed not "to *argue* for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level [of 33]." (emphasis added). The government's argument fails because the District Court invited and allowed the argument at the sentencing hearing.

After entertaining the defendant's motion on his criminal history component, the Court ruled in his favor, reducing the enhancement by one level. The Court then noted that the government's papers referred to a stipulation "with regard to not seeking a downward departure" and stated, "Notwithstanding the court's ruling a moment ago [granting the defendant's request to reduce his criminal history], I presume that you're seeking other downward departures?" The defense attorney replied,

> "Your honor, since *U.S. v. Booker* was decided, I sort of struggled with the issue exactly what the effect of the stipulation is in light of the decision
>
> . . . .
>
> I want to make a motion to call to the Court's attention that, even if the Court believes that I cannot make that motion at this time because of the stipulation, I

---

**7.** A. Doyle, Silver Blaze, in The Complete    Sherlock Holmes 335 (1927).

believe that under ... 18 U.S.C. § 3553, I think the Court can still take into account factors that the Guidelines otherwise would prohibit consideration of."

After a brief discussion of the affect of *Booker*, the Court observed that defendant was arguing that he had stipulated to the offense level, not the criminal history category. The Court then continued,

"Now, with regard to the other motions you have made ..."

Defense Attorney: "May I?"

The Court: "Yes, because I'm like, well, I don't really see a way to get around this."

The defendant's attorney then argued at some length, concluding, "the more reasonable sentence under *Booker* is something in that mandatory minimum range."

The Court then called upon the Assistant United States Attorney who spoke to the defendant's personal circumstances and concluded that "the guidelines [range] ... [is] fair." The government did not cite the stipulations banning argument nor object to the defense counsel's presentation at the sentencing hearing. At no point in the argument did the government's attorney declare that the plea agreement had been breached and ask that it be set aside. Had he done so, the District Court would have ruled on whether a violation had occurred and whether it had been waived. *Baird*, 218 F.3d at 230 (when a defendant violates a plea agreement, the government can declare a breach and attempt "to sever its relationship with defendant or to negotiate a new arrangement").

As is true with most oral presentations, articulation of the parties' contentions at the hearing was not as sharply defined as it would have been in carefully written form. But here it is clear that both the

Court and defense counsel were quite conscious of the stipulations in the plea agreement.

At the sentencing hearing, it was the Court that first brought up "the other motions," those discussing matters other than the criminal history. The defendant's attorney's question, "May I?," was a request to argue for a reduction in sentence despite the stipulations. The Court responded "Yes, because I'm like, well, I don't really see a way to get around this." This comment shows that the Court was pondering the issue and wished to hear defense counsel's views. It is significant, in view of the stipulations, that the Court did not interrupt the defense argument nor limit it in any way. The experienced district judge knew what he was doing.

A similar situation arose in *United States v. Bradstreet*, 207 F.3d 76 (1st Cir. 2000), *superseded on alternate grounds by* U.S.S.G. § 5K2.19 (2000). In that case, defendant agreed not to argue for a downward departure, but nevertheless did so at the sentencing hearing. *Id.* at 79. The district court recognized that it was not bound by the recommendations contained in a sentencing agreement and held that, even though the defendant's argument breached the agreement's terms, the court was entitled to consider the request for a departure. *Id.* at 81. The Court of Appeals affirmed, holding that "[b]ecause the government had sufficient notice of Bradstreet's argument and could formulate an effective response, we think the court acted within its discretion. Sentencing, after all, is a matter for the district court and not for the government." *Id.*[8]

Here, in granting permission to argue for a sentence outside the guidelines, the Court was properly exercising its authori-

---

**8.** *United States v. Bowe*, 257 F.3d 336, 345 (4th Cir.2001) came to a different conclusion, but I do not find it persuasive.

ty. The defendant's acceptance of the opportunity did not amount to a sanctionable breach of the plea bargain. Having received the Court's consent to argue a key component of sentencing, defense counsel's conduct was proper.

I must also question whether a plea agreement to forgo argument on a crucial phase of sentencing, consideration of the § 3553(a) factors, should be enforceable. To deny the sentencing judge the ability to carry out his statutory duty and responsibility through consent of the parties seems to undermine the sentencing procedure Congress has mandated. The sentencing judge in this case chose to hear argument under § 3553(a), a ruling that was responsible and proper.

Perhaps reflecting doubts about *Booker*'s scope in its immediate wake, the government's phrasing of the plea agreement might be seen as an effort to force the District Court to sentence within the guidelines. In addition to the provisions restricting the parties' ability to argue for departures and sentences outside the guidelines range, the parties stipulated that "the Court *should* sentence Williams within the Guidelines range that results from the total Guidelines offense level [of 33]." (emphasis added).

However, it was agreed that "[t]he sentence to be imposed upon Williams is within the sole discretion of the sentencing judge, subject to the Sentencing Reform Act, 18 U.S.C. § 3551–3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. The United States Sentencing Guidelines are advisory, not mandatory." Further, the prosecutor reminded defendant that the "agreement to stipulate ... cannot and does not bind the sentencing judge, who may ... reject any or all of the stipulations entered into by the parties."

The language of these latter provisions reflects the state of sentencing after *Book-*er. The Supreme Court's conclusion that appellate courts should review district courts' sentencing decisions for "reasonableness" under an "abuse-of-discretion standard" reinforced the notion that *Booker* granted district courts broad sentencing discretion. *See Gall v. United States*, 552 U.S. ——, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007) ("[an] appellate court should ... consider the substantive reasonableness of the sentence imposed under and abuse-of-discretion standard.... [It] must give due deference to the district court's decision."); *Kimbrough v. United States*, 552 U.S. ——, 128 S.Ct. 558, 575, 169 L.Ed.2d 481 (2007) (stating that appellate courts must give "due respect to [a] District Court's reasoned appraisal" of the proper sentence for a defendant).

Just as deference is due to the District Court's decision on the appropriate length of a sentence, so too should that be the result with respect to the procedural rulings made by the sentencing judge. In interpreting and applying plea agreements particularly, district judges, with their knowledge of local conditions, are in a superior position to assess those agreements. Sentencing is primarily the responsibility of the district courts, not the probation office, not the government, not the defense, and not the appellate courts, although those parties may provide valuable insights.

In conclusion, the defendant's argument advocating a reduction in his criminal history was not precluded in the plea agreement. The Court made a permissible procedural ruling in deciding to hear the defendant's other arguments. The sentence was reasonable. Accordingly, I would affirm the judgment of the District Court.