NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2292
_____

UNITED STATES OF AMERICA,
Appellant

v.

STEVE YOUNG KANG,
a/k/a Kang, Steven Young;
a/k/a Kang, Young Tae
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No. 2-19-cr-00394-001)
District Judge: Honorable William J. Martini
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 2, 2022
_____

Before: GREENAWAY, JR., PORTER, and PHIPPS, *Circuit Judges*.

(Opinion Filed: September 22, 2022)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

A contract requires that both sides agree to adhere to certain rights and obligations. A plea agreement is a contract. The government and the defendant have certain rights and obligations that arise in every plea agreement. If either party acts outside of those parameters, the agreement is breached. Here, the government asks us to decide whether Steven Young Kang breached the terms of his plea agreement. Since, for the reasons set forth below, we conclude that Kang did breach his plea agreement, we will vacate his sentence and remand the case to a different district judge for resentencing.

## A. Background

Beginning in 2013, Kang, a real estate broker and investor, participated in a scheme involving the fraudulent short sales of various properties. Through the use of the fraudulent scheme, Kang and his co-schemers[1] defrauded nine financial institutions of over $2.8 million. Ultimately, Kang was charged by information with one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of wire fraud, in violation of 18 U.S.C. § 1343.

Kang and the government entered into a plea agreement. Relevant to the present discussion, Schedule A of the plea agreement provided that

> 1. [The government] and Steven Kang recognize that the United States Sentencing Guidelines are not binding upon the Court. [The government] and Steven Kang nevertheless agree to the stipulations

---

[1] Since the underlying offenses were charged as a scheme, not a conspiracy, we will refer to the other participants as co-schemers.

set forth herein, and agree that the Court should sentence Steven Kang within the Guidelines range that results from the total Guidelines offense level set forth below. [The government] and Steven Kang further agree that neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level.[2]

. . .

14. The parties agree not to seek or argue for any upward or downward departure, adjustment or variance not set forth in the Complete Agreement. The parties further agree that a sentence within the Guidelines range that results from the agreed total Guideline offense level is reasonable.

App. 44-45.

After the District Court accepted Kang's guilty plea, Kang retained new counsel. His new counsel moved to strike[3] stipulation 14 from the plea agreement. Kang's argument focused on one sentence in the plea agreement: "if [the government] obtains or receives additional evidence or information prior to sentencing that it determines to be credible and to be materially in conflict with any stipulation in the attached Schedule A, [the government] shall not be bound by any such stipulation." App. 39. He argued that "[t]he Government's right to treat stipulations in the plea agreement as non-binding upon the discovery of [new and credible] facts . . . must cut both ways," App. 77, because

---

[2] The agreed upon Guidelines offense level was 22, resulting in a sentencing range of 41 to 51 months.

[3] Kang filed two other motions – one about restitution and the other related to discovery regarding the restitution. Those motions are not relevant to the issue on appeal.

failing to do so would violate due process and the separation of powers. In support of that argument, Kang provided four pieces of information he believed relevant to his sentencing. His new evidence was (1) a psychological evaluation that supported a diminished capacity departure, (2) a statistical analysis of sentences for similarly situated defendants showing that "50.7% received sentences that were, on average, 17.7 months below the Guidelines range," App. 86,[4] (3) a report about Kang's community service, and (4) the impact of the COVID pandemic.

The government opposed this motion, arguing, among other points, that the motion "presumptuously, precipitously, and recklessly expanded [Kang's] argument beyond facts and law relevant to the issue of the enforceability of Stipulation 14," essentially "argu[ing] for a downward departure"[5] in violation of the plea agreement.[6] App. 141.

---

[4] In addition, the statistical analysis of "sentences for defendants who had the exact same guideline calculation as Kang" showed that "77% received sentences that were 19.9 months below the Guidelines Range." App. 86.

[5] "A 'variance' is a sentence that deviates from the guidelines range based on the § 3553(a) sentencing factors. A 'departure,' on the other hand, is a sentence that differs from the guidelines range based on specific guidelines provisions that authorize such changes." *United States v. Yusuf*, 993 F.3d 167, 171 n.2 (3d Cir. 2021).

As explained below, Kang discussed both a downward departure and a downward variance in his motion to strike.

[6] Contrary to Kang's argument before us, the government clearly raised before the District Court the issue of whether Kang's motion was a breach of the plea agreement, thus preserving the issue for appeal.

The District Court denied the motion, finding no constitutional violation in the plea agreement. Further, the District Court concluded that Kang "has not breached his plea agreement by raising constitutional claims concerning the validity of various stipulations. Defendant may raise the new evidence to argue for a sentences [sic] at the lowest end of the guideline range." App. 17.

In his sentencing memorandum, Kang discussed these four items of evidence, along with other factors, in support of his request for lenity. At the sentencing hearing, Kang's counsel also argued for lenity. The District Court varied downward to an offense level of 15, which resulted in a sentencing range of 18 to 24 months. The District Court imposed a term of 18 months of incarceration, to be followed by three years of supervised release. The government objected to this sentence.

The government filed a timely notice of appeal from this judgment of conviction. Subsequently, the District Court filed two amended judgments to address restitution and to correct clerical errors. The government filed a second notice of appeal from the final amended judgment.

**B. Analysis[7]**

"When the question of whether a defendant breached a plea agreement has been properly preserved for appeal, our review is de novo." *United States v. Yusuf*, 993 F.3d

---

[7] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

167, 175 n.5 (3d Cir. 2021).

"[W]e will analyze the issue whether a defendant has breached a plea agreement according to the same contract principles that we would apply in analyzing a government breach, including the principle that we will construe ambiguities in the agreement against the government." *United States v. Williams*, 510 F.3d 416, 424 (3d Cir. 2007). "[A] defendant should not be permitted 'to get the benefits of [his] plea bargain, while evading the costs . . . and contract law would not support such a result.'" *Id.* at 422 (quoting *United States v. Bernard*, 373 F.3d 339, 345 (3d Cir. 2004)). "The essential question is whether the alleged breaching party's 'conduct is consistent with the parties' reasonable understanding of the agreement.'" *Id.* at 425 (quoting *United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2005)).

Recently, in *Yusuf*, we examined the difference between simply providing evidence for the sentencing court's consideration and "advocat[ing] for a sentence below the agreed upon guidelines range." *Yusuf*, 993 F.3d at 181. We noted that "[t]he distinction may be a fine one, but it is important." *Id.* In that case, "[h]ad Yusuf only informed the District Court of [his co-conspirator's] sentence and reminded the Court that he was bound by the plea agreement, the Court may well have intuited the argument that was left unsaid." *Id.* However, "defense counsel not only pointed out the existence of [the co-conspirator's] lower sentence but went on to suggest that the bottom of the guidelines range was therefore too long a sentence for Yusuf." *Id.*

Here, Kang's counsel did not leave the arguments unsaid, despite his assertion that

6

he was filing his brief in support of his motion to strike "prior to sentencing, with the specific intent of avoiding any question of a breach of the plea agreement." App. 76. Despite this assertion, it is apparent that counsel's intent was quite the contrary. The motion to strike was a thinly-veiled attempt to present evidence and related argument to the District Court in an attempt to obtain a lower sentence for Kang based on either a downward departure or a downward variance.

The brief submitted to the District Court clearly referenced "a [p]otential [d]ownward [v]ariance" based on the psychological evaluation. App. 79. Not only that, but the psychological report itself discussed how "the results of [the] psychological evaluation of Steven Kang come close to supporting the rationale behind the formerly utilized 5K2.13 (diminished capacity) departure." App. 81 (quoting Report of Dr. Elliot L. Atkins, Ed.D., P.A.). Further, the statistical analysis of nationwide sentences demonstrated that the majority of similarly-situated defendants received downward variances, resulting in sentences below the bottom of the Guidelines range.

Counsel sought the opportunity to use all of this information in order to "argu[e] for the specific sentence that is sufficient but not greater than necessary." App. 93. He noted that the plea agreement "bars the sentencing court from the benefit of defense counsel's analysis of why a specific sentence of less than 41 months incarceration is the sentence that meets the congressional definition of the proper sentence." App. 88-89. He further argued that "[d]efense counsel is the right person to supply those individual facts and circumstances that might well lead a sentencing judge to vary downward." App. 90.

7

Making these arguments in a motion to strike, rather than in the sentencing memorandum, does not change their impact, nor does it alter our analysis. Counsel "violated the spirit, if not the letter, of the plea agreement." *United States v. Badaracco*, 954 F.2d 928, 940 (3d Cir. 1992).

In support of his position that he did not violate the plea agreement, counsel asserts that the introduction of the evidence was necessary in order to support his constitutional arguments challenging the validity of the plea agreement. Introduction of the evidence itself would not breach the plea agreement. The breach arose when counsel advocated for a below-Guidelines sentence disguised as argument in support of his motion to strike.

Relying on *Yusuf*, Kang further argues before us that he "did not cross the line and advocate for a sentence below the stipulated guideline." Appellee's Br. at 23. While he did not argue in his sentencing memorandum or at the sentencing hearing for a sentence below the agreed upon Guidelines range, counsel nonetheless advocated for a downward variance and downward departure in his motion to strike. This advocacy was a violation of the plea agreement.

Having concluded that Kang breached the plea agreement, we must decide upon the appropriate remedy. Our precedent is clear that when a defendant breaches a plea agreement, the remedy is specific performance in the form of resentencing before a different district judge. *Yusuf*, 993 F.3d at 181-82. At that resentencing, Kang can present relevant evidence, such as the two reports and evidence of Kang's community

service, but counsel cannot argue for a sentence outside of the agreed upon range of 41 to 51 months.

## C.  Conclusion

For the reasons stated above, we conclude that Kang breached his plea agreement. We will therefore vacate his sentence and remand the case to a different district judge for resentencing.